Decided May 6, 1931

For full opinion 178 NE 314; 40 Oh Ap 282.

### McGREW, Admr. v DRAHMAN

Ohio Appeals, 1st Dist, Hamilton Co

No 3788. Decided Feb 24, 1931

280

Sylvester Hickey, Cincinnati, for plaintiff in error.

Wm. F. Madden, Cincinnati, for defendant in error.

ROSS, PJ.

The petition does not allege any express covenant and the evidence is not only devoid of proof of such contract, but positively negatives the existence of **any contract** on the part of the decedent to pay for the vauable services rendered him. We quote sufficient portions of the record to indicate this:

"Q. You and your daughter during this period, you lived there in the house, had your rooms and your board?

A. Yes.

Q. From Charlie. Did you ever have any conversation with Charles Quebe, whom you are suing, as to whether he was to pay you anything for the services that you were rendering him, in addition to getting your free board?

A. Charles Quebe, I couldn't talk to him, because you couldn't talk to him about anything like that. He was just like a child.

Q. Therefore Charles Quebe, the defendant here never made any arrangement with you, for you to work for him, for to be paid?

A. No, but the administrator was the one that got me to stay there.

Q. Charles Quebe never made any such arrangement?

A. Oh no, he couldn't.

x x x x x x x

Q. He wasn't insane at that time?

A. He wasn't just exactly insane, but he was never real bright.

Q. Never real bright?

A. No sir.

Q. Not a real smart man, because he had been ill from his youth up, but still he wasn't insane at that time?

A. No, he wasn't insane.

Q. Even if you thought so—I won't say that; however the defendant never contracted with you that you should act as a nurse, and do the services, did he?

A. Oh no, but he wanted me to take care of him.

Q. But he never said he was going to pay you, and you never had any conversation with him?

A. Surely, you couldn't have any conversation with him about it.

x x x x x x

Q. You don't say he is insane?

A. Well he wasn't just insane, but he was just like a child, like a young man six years old.

x x x x x x

Q. And in no case did he, competent or incompetent, nor did any guardian of his ever make a contract with you, whereby you were to become his nurse, is that right?

A. They never made no contract as to pay, but I understood that they were going to leave me have the home to live in, what Aunt Ella had promised me for taking care of him.

Q. Who gave you that understanding?

A. The folks, but never gave me an understanding what I was to get.

Q. Who gave you an understanding you were to get anything?

A. After Aunt Ella died, nobody.

x x x  x x x

Q. When was that, how near after his mother died?

A. Right after his mother died his cousin came down, Effie, she used to live with them all of the time and she wanted to keep him and he begged me not to let her have him, and Rob was trying to get him in a home_ and he said they couldn't get him in a home on account of he had some money, and I kept him a year and when they were going to put him in a home, Charlie just begged me not to put him in a home and I kept him.

x x x x x

Q. I would like to get clear and I think possibly the jury and the Court would also like to get clear; at the time you performed these services for Charlie Quebe, did you expect that he would pay you for them?

A. No.

Q. You didn't expect that Charlie Quebe would pay you for them at the time you performed these services, you didn't anticipate that he would pay you for them?

A. No, I expected the folks to pay me, his aunts.

Q. You expected who?

A. His folks, the heirs.

x x x x x x

Q. You didn't expect and didn't anticipate, as you have stated, that Mr. Quebe himself, for whom you performed these services, would pay you. Now who did you expect to pay you?

A. I didn't expect anybody but the heirs after his death.

x x x x x x

Q. At her death you stopped paying board?

A. Yes sir.

Q. You occupied the house?

A. I done it——

Q. You voluntarily gave these services?

A. Yes.

Q. To this man?

A. Yes.

Q. And nobody ever contracted with you and told you that for doing these services that you were to be paid?

A. No one. Rob asked me to keep him.

Q. Bob, Bob who?

A. Bob Bolce, the administrator.

Q. The administrator of who?

A. Aunt Ella, Mrs. Quebe.

Q. Now the administrator of the estate asked you to keep this man?

A. Yes."

We, under such circumstances, although fully cognizant of the meritorious character of the plaintiff's services, are bound by the rules laid down in: **Hinkle, et al Exrs. v. Sage, 67 Oh St, 256,** and **Merrick v. Ditzler, 91 Oh St, 256,** and conform to the conclusion in Arns, Executor v. Disser, opinion in which case is announced February 9th, 1931, by this Court.

The trial court committed error in not instructing a verdict for the defendant at the close of all the evidence.

For the reasons given, the judgment of the court of common pleas will be reversed, and final judgment will be entered in this court for the defendant below, plaintiff in error here.

HAMILTON & CUSHING, JJ, concur.